**Dorothy M. THOMPSON, et al.**

v.

**Ralph E. KENNICKELL, Jr., Public Printer, Appellant.**

**Dorothy M. THOMPSON, et al., Appellants**

v.

**Ralph E. KENNICKELL, Jr., Public Printer.**

Nos. 85–5241, 85–5242.

United States Court of Appeals, District of Columbia Circuit.

Argued April 3, 1986.

Decided Jan. 8, 1988.

---

Robert C. Seldon, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief for appellant in 85–5241 and cross-appellee in 85–5242.

Roger E. Warin, with whom Bryan T. Veis, Washington, D.C., was on the brief for appellees in 85–5241 and cross-appellants in 85–5242.

Nora A. Bailey, David Dorsen and Roderic V.O. Boggs, Washington, D.C., also entered appearances for appellees in 85–5241 and cross-appellants in 85–5242.

Before WALD, Chief Judge, BORK and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The appeal before us presents four issues within the context of federal fee-shifting statutes: first, whether a district court may use *current* market rates to compute the lodestar figure in an action brought

against the Government; second, whether a public-interest lawyer's "normal hourly rate" represents an established billing rate and thus a presumptively reasonable rate for the attorney's services; third, whether a district court may award an enhancement of the lodestar figure to reflect contingency of success; and, fourth, the circumstances under which a district court may award an enhancement for the superior quality of representation. After prevailing in the underlying litigation, class counsel applied for attorneys fees under the fee-shifting provisions of the Equal Pay Act of 1963, 29 U.S.C. § 216(b) (1982), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982). The district court awarded fees based, in part, on current market rates and granted a 75% fee enhancement for contingency of success and exceptional results obtained. We remand to the district court for a new calculation of the public-interest attorney's lodestar figure and remand the award of a 50% contingency enhancement for further consideration in light of a recent Supreme Court decision regarding fee enhancements. We reverse the award of a 25% enhancement for exceptional results.

## I.

This litigation began on July 24, 1974, when five female employees of the Government Printing Office ("GPO") filed a class action against the GPO for discriminatory practices in violation of the Equal Pay Act of 1963, codified as amended, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, codified as amended, 42 U.S.C. § 2000e-16. After extended litigation, the district court ruled in favor of the plaintiff class under both theories of liability.

*Thompson v. Boyle,* 499 F.Supp. 1147 (D.D.C.1979). Shortly thereafter, the district court issued an order granting relief to the plaintiffs, including front and back pay and hiring preferences. On appeal in April, 1982, this court affirmed the district court's liability determination and, in large part, the relief granted. *Thompson v. Sawyer,* 678 F.2d 257 (D.C.Cir.1982). All remaining issues regarding relief were subsequently resolved through consent decrees.

Over the course of litigation, the plaintiff class was represented by two private attorneys, Nora A. Bailey of Ivins, Phillips & Barker and David M. Dorsen of Sachs, Greenebaum & Tayler, and a public-interest lawyer, Roderic V.O. Boggs of the Washington Lawyers' Committee for Civil Rights Under Law. Class counsel applied for attorneys' fees and costs under the fee-shifting provisions of the Equal Pay Act, 29 U.S.C. § 216(b), and Title VII, 42 U.S.C. § 2000e-16(d), incorporating 42 U.S. C. § 2000e-5(k). Counsel's fee application was modeled on the lodestar method.[1] Counsel sought the court's approval to use current rates rather than historical rates in computing the lodestar figure so as to compensate the attorneys for delay in payment. And, plaintiffs' counsel sought a 100% enhancement of the lodestar figure: 50% to reflect the risk of not prevailing in the litigation and 50% for the exceptional results obtained.[2]

The district court awarded $1,566,232.50 in attorneys' fees and $37,797.05 in costs and expenses. *Thompson v. Barrett,* 599 F.Supp. 806, 817 (D.D.C.1984). The court set the lodestar figure at $894,990.00, *id.,* employing historical billing rates for the private attorneys and a current rate for public-interest counsel. The current rate

---

1. The lodestar method, adopted by this Circuit in *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir. 1980) (en banc), begins by setting the lodestar figure, which is "the number of hours reasonably expended multiplied by a reasonable hourly rate." *Id.* at 891. This figure " '*is presumed* to be the reasonable fee' to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (hereinafter *"Delaware Valley I"*) (citing *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79

L.Ed.2d 891 (1984)). In rare and exceptional cases, adjustment to the lodestar figure is permissible to incorporate factors not reflected in the lodestar. *See id.; Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 13 (D.C.Cir.1984).

2. Counsel for the plaintiff class submitted four pleadings in support of their application for attorneys' fees. We refer here to the fourth pleading, which revised the fee-petition in light of this court's holding in *Laffey.*

awarded by the court to the public-interest attorney was the hourly rate established by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983). In addition, the court enhanced the lodestar figure by 50% to reflect "the substantial risk involved in bringing this suit," *id.* at 815, and by a further 25% for the "exceptional results obtained." *Id.* at 816. The GPO now appeals, arguing that the district court erred both as to the use of current rates for public-interest counsel and as to the award of a 75% enhancement. Class counsel cross-appeals from the district court's decision to employ historical rates for the private attorneys in computing the lodestar figure.

## II.

### A.

■ The first issue on appeal, as well as the cross-appeal, raises the propriety of using current billing rates in the lodestar figure to compensate attorneys for delay in payment. After oral argument in this case, the Supreme Court resolved this question against the use of current rates where the Government is the party defendant. In *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the Court held that Congress did not waive the Federal Government's traditional immunity from an award of interest when it afforded federal employees a right of action under Title VII. *Id.* at 2964. Accordingly, the Court reversed a 30% enhancement to the lodestar intended "to compensate counsel for the delay in receiving payment for the legal services rendered." *Id.* at 2960.

The Court in *Shaw* refused to recognize a distinction between a formal interest charge and an enhancement for delay; "interest and compensation for delay are functionally equivalent" and are therefore both precluded by the no-interest rule. *See id.* at 2965–66. More recently, the Supreme Court noted that the use of current rates in a lodestar may be an alternative method of compensating for delay. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, — U.S. —, 107 S.Ct. 3078, 3081–82, 97 L.Ed.2d 585 (1987) (White, J., writing for the plurality) (hereinafter *"Delaware Valley II"*). So we conclude that *Shaw* prohibits the use of current rates for work performed under Title VII.

Similarly, Congress did not waive the Government's immunity when it enacted the Equal Pay Act. The language of the fee-shifting provision under the Equal Pay Act does not expressly waive the Government's immunity,[3] and, as in the case of Title VII, the legislative history is silent as to the award of interest. We conclude that, where the Government is a defendant, *Shaw* precludes as well the use of current rates for work performed under the Equal Pay Act.

We therefore affirm the district court's award of historical billing rates for the private attorneys and reverse its decision to use a current rate for public-interest counsel.

### B.

■ The Government also contests the district court's failure to accept as dispositive certain evidence of the "normal hourly rate" for the public-interest lawyer. The Government argues that public-interest counsel had a lower hourly rate than that awarded by the district court, as evidenced by a stipulation in a memorandum filed in an unrelated action. *See Memorandum Concerning Settlement* (J.A. 616–618) (filed in *Bryant v. Benevolent and Protective Order of Elks*, C.A. No. H–75–1864 (D.Md.1978)) ("[t]he hourly rate of Mr. Boggs is normally $60 per hour, whereas his attorneys fees are being paid at the rate of less than $20 per hour."). Appellants claim the stipulation provides evidence either of an established billing rate or of the opportunity cost of the attorney's time. In either case, appellants argue the

---

3. 29 U.S.C. § 216(b) provides, in relevant part, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plain-

tiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

evidence should have led the court to award a rate far lower than $150 per hour. Class counsel responds that the public-interest lawyer does not bill clients and thus does not have an established billing rate. Moreover, they argue that the stipulation was submitted to the district court; the fact that it was given little weight does not prove that the court's findings were clearly erroneous.

The Supreme Court has observed that the aim of federal fee-shifting statutes is "to enable private parties to obtain legal help ..." *Delaware Valley I*, 106 S.Ct. at 3098. Accordingly, the Court indicated that a reasonable attorney's fee "is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.'" *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed. 2d 891 (1984) (quoting S.Rep. No. 94–10011, p. 6 (1976)). We held in *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C.Cir. 1984), that the presumptively reasonable rate for attorneys with billing histories is the attorney's customary billing rate, because the billing rate provides the most probative evidence of the rate at which competent counsel can be retained. *See id.* at 18; *see also Save Our Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 47–50 (D.C.Cir.1987) (*reh'g en banc granted* 830 F.2d 1182 [D.C.Cir.1987]) (holding that a private attorney's customary billing rate, employed in 20% to 50% of his cases, is the presumptively reasonable rate for his services).

To be sure, our holding in *Laffey* only addressed the determination of rates for private attorneys with billing histories. Here, by contrast, we are faced with a public-interest attorney, but nonetheless one who has stipulated to a "normal hourly rate." We see no reason why the stipulation—if it provides evidence of the attorney's customary billing rate—does not reflect "the opportunity cost of foregone representations." *Laffey*, 746 F.2d at 18. Accordingly, the stipulation may provide evidence of the presumptively reasonable rate for public-interest counsel.

The Supreme Court's decision in *Blum* does not contradict this conclusion. *See Blum*, 465 U.S. at 894, 104 S.Ct. at 1546 ("Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization."). The Court's holding does not require that court awarded rates be identical as between the private and public sector, or, for that matter, within any specific sector. Rather, the Court there merely rejected the argument that rates for public-interest counsel should be based on a cost-related standard instead of on the prevailing market rate, which was the measure for private attorneys' rates. *See id.* at 892–96, 104 S.Ct. at 1545–47. The Court concluded that *all* attorneys' rates must "be calculated according to the prevailing market rates in the relevant community...." *Id.* at 895, 104 S.Ct. at 1547. As in the case of private attorneys with billing histories, the presumption of reasonableness accorded to the public-interest attorney's customary billing rate may be rebutted if the attorney demonstrates that this rate does not "fall[ ] within the rates charged by other firms for similar work in the same community." *Laffey*, 746 F.2d at 24–25.

In computing the lodestar figure for public-interest counsel, the district court employed the reasonable rate for attorneys without billing histories that was established during the same time period by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983). Consequently, the district court did not make a factual finding as to whether counsel's "normal hourly rate" as set forth in the stipulation was his established billing rate. We therefore remand to the district court for further consideration of the weight of the stipulation in light of *Laffey*, 746 F.2d at 15–25; *Cumberland Mountains*, 826 F.2d at 47–50 and *Blum*, 465 U.S. at 892–96, 104 S.Ct. at 1545–47.

## C.

The third issue involves the propriety of enhancing the lodestar figure to re-

flect the contingent nature of success and the corresponding possibility that plaintiffs' counsel would not be compensated. The district court awarded a 50% risk adjustment based on the low statistical probability of success, on the particular legal risks involved, on the protracted nature of the litigation, and on the novelty and complexity of the issues raised. *See Thompson v. Barrett*, 599 F.Supp. at 815. The Government contests the 50% award, arguing that the above factors are fully reflected in the lodestar figure.

The Supreme Court has recently set forth the legal standard for contingency enhancements under fee-shifting statutes. *See Delaware Valley II*, 107 S.Ct. 3078. A majority of the Court reversed a 100% risk enhancement in that case, and a plurality of four contended that contingency enhancements are inappropriate.... ("What, never? No, never!"). But Justice O'Connor concurring and four Justices in dissent concluded that "Congress did not intend to foreclose consideration of contingency in setting a reasonable fee under fee-shifting provisions...." *Delaware Valley II*, 107 S.Ct. at 3089 (O'Connor, J., concurring in part and concurring in the judgment); *id.* at 3091 (Blackmun, J., dissenting). Under these unusual circumstances, Justice O'Connor's concurring opinion in effect set the limited standard for permissible contingency enhancements.... ("What, *never?* Hardly ever!"). She requires that two prerequisites be met for an award: first, it must be shown that "without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Id.* at 3090–91 (citing plurality opinion at 3089) (O'Connor, J.). Second, the rates of compensation in the private market for contingent fee cases *as a class* must differ from those where counsel is paid, win or lose, on a regular basis. *Id.* at 3089–90 (O'Connor, J.). The fee applicant bears the burden of proof as to these issues. *Id.* at 3090 (O'Connor, J.). Justice O'Connor's standard, then, treats neither

the legal risks, nor the novelty and complexity of the issues, nor the protracted nature of the litigation as relevant to the propriety of contingency enhancements. She indicates these factors "should already be reflected in the number of hours expended and the hourly rate, and cannot be used again to increase the fee award." *Id.* at 3091 (O'Connor, J.).

In their Supplemental Brief, class counsel contend this case satisfies Justice O'Connor's two prerequisites. They argue that the record before the district court provides sufficient evidence of plaintiff class' difficulty in obtaining counsel. They also claim that the district court considered fee awards in similar Title VII and Equal Pay Act litigation, and granted the enhancement based in part on the different court treatment of contingency cases. *See Thompson v. Barrett*, 599 F.Supp. at 816 ("[s]uch a 50% increase for risk in a Title VII and Equal Pay Act action such as this finds support in the case law of this and other circuits." *Id.* (citations omitted)).

We cannot agree. Justice O'Connor's test is stringent and requires the fee applicants to demonstrate that, absent a contingency incentive, the prevailing party would have faced "substantial difficulties in finding counsel." *Delaware Valley II* 107 S.Ct. at 3091 (O'Connor, J., concurring). However, because neither the district court nor the parties were aware of Justice O'Connor's formulation, we believe that we should remand this case to the district court for reconsideration in light of *Delaware Valley II*.[4] 28 U.S.C. § 2106 (1982); *see Meehan v. Macy*, 425 F.2d 469 (D.C.Cir. 1968), *aff'd per curiam on rehearing en banc*, 425 F.2d 472 (D.C.Cir.1969).

### D.

■ Finally, the Government contends that the district court erred in awarding a 25% fee enhancement for "exceptional results obtained." Appellant argues that although the district court stated the proper

---

**4.** *Delaware Valley II* was decided over a year after this case was argued on appeal, and eight years after it was heard in the district court.

legal standard for an award, it flatly misapplied the law. The district court, according to the Government, failed entirely to demonstrate why the presumptively reasonable lodestar figure did not adequately reflect the "results obtained." Appellees respond that the court could not have demonstrated more clearly that it had considered the relationship between the results and the lodestar figure. We agree with appellant, and we reverse the 25% enhancement award.

As a preliminary matter, we note that the appropriate term for the enhancement in question is "an enhancement for quality of representation" rather than one "for exceptional results obtained." To be sure, there is ambiguity in Supreme Court opinions as to whether "results obtained" is a separate enhancement factor or instead one element in the enhancement factor for "quality of representation."[5] But this Circuit has traditionally favored the second interpretation. *See Copeland v. Marshall,* 641 F.2d 880, 894 (D.C.Cir.1980); *Murray v. Weinberger,* 741 F.2d 1423, 1429 (D.C. Cir.1984). Most recently, in *Cumberland Mountains,* we indicated that "an exceptional results multiplier is meant to compensate counsel for work of exceptional quality as to which the lodestar award is inadequate." 826 F.2d at 52–53. If "results obtained" were employed as an independent factor for enhancement, the district court would be required to predict the "normal" result that would have obtained. This is, in our view, an impossible task if divorced from an inquiry into the "normal"

efficiency and skill of counsel. In any event, we are, of course, bound to follow this Circuit's traditional approach; accordingly, we consider "results obtained" only "under the rubric of 'quality of representation.' " *Copeland v. Marshall,* 641 F.2d at 894.

The law regarding enhancements for quality of representation is well established: the lodestar figure is presumably the reasonable fee, and a multiplier for superior quality is appropriate only where the moving party has demonstrated "that enhancement was necessary to provide fair and reasonable compensation." *Blum,* 465 U.S. at 901, 104 S.Ct. at 1550. The Supreme Court recently reaffirmed these principles in *Delaware Valley I.* There, the Court again emphasized:

> the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.

*Id.* 106 S.Ct. at 3098 (citing *Blum,* 465 U.S. at 898–900, 104 S.Ct. at 1548–49).[6]

In the instant case, the fee applicant produced no specific evidence to rebut the presumption that the lodestar figure was reasonable. *See* J.A. 68–90 (*Plaintiffs' Application for an Award from Defendant of Attorneys' Fees and Costs*) (where appellees document the efficiency of their

---

**5.** Initially, in *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983), the Supreme Court indicated that "in some cases of exceptional success an enhanced award may be justified." Subsequently, in *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Court reformulated the above passage from *Hensley,* subsuming "results obtained" under the rubric of "quality of representation." The Court indicated "[t]he 'quality of representation,' ... may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior ... and that the success was 'exceptional'." *Id.* at 899, 104 S.Ct. at 1549. In a neighboring paragraph, the Court also referred to "results obtained" as a separate factor relevant to the computation of fees; however, the Court's discussion there dealt

with a different issue, *viz.* the degree to which plaintiff is deemed to have prevailed. *See id.* at 900, 104 S.Ct. at 1549. Most recently, in *Delaware Valley I,* the Court struck down an enhancement for "superior quality," which had been awarded based on the quality of service and the exceptional results obtained. The Court did not single out the "results obtained" factor, but, instead, dealt with the entire matter under the rubric of "the overall quality of performance." 106 S.Ct. at 3099.

**6.** *See also Delaware Valley II,* 107 S.Ct. at 3091 (O'Connor, J., concurring) ("The lodestar ... is flexible enough to account for great variation in the nature of the work performed in, and the challenges presented by, different cases.").

work and the reasonableness of hours spent, but do not indicate why the lodestar is not the presumably reasonable fee with respect to the quality of representation). And, while the district court articulated the proper legal standard, *see* 599 F.Supp. at 815 ("[c]oncurrent with [the applicants'] burden is the duty of the district court to justify with particularity why an adjustment is needed to fully compensate the attorneys."), it certainly did not "justify with particularity" why the presumption of reasonableness was rebutted. Instead, the court treated the exceptional victory as an independent factor warranting enhancement *per se.* *See* 599 F.Supp. at 816 ("[t]his was certainly an exceptional case, with far-reaching impact on an entire business or profession."). The court's analysis of the enhancement award fails to mention the hourly rates charged or the number of hours worked, and fails to explain why compensation for hours worked would not fully compensate the attorneys. We thus have no alternative but to reverse the court's 25% enhancement award.

\*     \*     \*     \*     \*     \*

Accordingly, we affirm the district court's use of historical billing rates for the private attorneys and reverse and remand the use of current rates for public-interest counsel. And, we remand to the district court for further consideration as to what weight should be accorded the public-interest attorney's stipulation regarding his "normal hourly rate." We also remand to the district court to reconsider the 50% contingency enhancement in light of *Delaware Valley II.* Finally, we reverse the district court's award of a 25% enhancement to the lodestar figure for exceptional results.

*It is so ordered.*