**ISLAMIC CENTER OF MISSISSIPPI, INC., et al., Plaintiffs–Appellants,**

**v.**

**CITY OF STARKVILLE, MISSISSIPPI, Defendant–Appellee.**

No. 88–4530.

United States Court of Appeals, Fifth Circuit.

June 30, 1989.

Wilbur O. Colom, Columbus, Miss., for plaintiffs-appellants.

Dolton W. McAlpin, Lydia Quarles, Starkville, Miss., for defendant-appellee.

Before RUBIN, KING and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The prevailing plaintiff in a civil-rights case contends that the district court abused its discretion when, in computing the lodestar for the award of attorney's fees under 42 U.S.C. § 1988, it set the attorneys' hourly rates at less than the amounts they usually charge other clients, and refused to enhance the lodestar calculated on this basis either for contingency or delay in receipt of payment. We affirm the judgment in part, but because the district court did not adequately explain the reasons for its actions, we reverse it in part, and remand the case for further consideration.

## I.

The Islamic Center of Mississippi, Inc., an association of Muslim students attending Mississippi State University in Stark-

ville, Mississippi, sued the City of Starkville to compel it to issue a zoning exception permitting the Islamic Center to use a building as a mosque. The Islamic Center contended that the City's denial of its application violated its rights under the First and Fourteenth Amendments to the Constitution. Wilbur O. Colom and his associate, Dennis Harmon, a recent law school graduate, represented the Islamic Center without any promise of payment. If the suit were successful, Colom and Harmon would seek an award of attorney's fees pursuant to 42 U.S.C. § 1988. If the suit failed, they would receive no fee.

After considerable discovery and other pretrial proceedings, the Islamic Center lost the bench trial, a six-hour hearing in the federal district court for the Northern District of Mississippi. It later obtained a reversal in the court of appeals and was awarded the relief it had sought. It then requested that the district court award it $118,342.55 as the attorney's fees and costs due the prevailing party: $39,574.50 for the work of their attorneys, based on a rate of $120 per hour for Colom and $90 per hour for Harmon; $78,269.00 as enhancement, based on the contingent nature of Colom's compensation and his delay in receiving payment; and $2,499.15 for costs incurred, other than court costs taxable under 28 U.S.C. § 1920.

To substantiate the reasonableness of the hourly rate he had requested, which he attested was the rate he charged fee-paying clients, Colom submitted five affidavits from other lawyers practicing in the Northern District of Mississippi stating that the customary charge for complex civil-rights litigation in federal court ranged from $65 to $150 per hour.

To support his claim that the lodestar should be increased because he had represented the Islamic Center on a contingent basis, Colom filed a supplemental affidavit attesting: since 1982, he had had a sufficient number of clients able to pay an hourly rate to consume all of his time; he accepted contingency personal-injury and civil-rights cases "with an expectation of

receiving a substantially higher rate per hour" when successful; he would not have taken this case had he not anticipated an enhancement of his hourly rate if he won; and most other law firms in the area would not accept such cases if success were to be recognized only by the award of the customary hourly rate. To emphasize this final point, Colom submitted two additional affidavits from local attorneys asserting that "[w]ithout enhancement of fees, ... the local legal market would not provide competent counsel to represent plaintiffs on a contingency fee basis."

To support his claim for a delay enhancement, Colom stated in his affidavit that he charges regular clients 18% interest per year for delinquent accounts, although the statutory rate of interest in Mississippi is 8% per year.

The City contended that the amounts sought as fees should not be paid, but offered no evidentiary materials contesting the factual affidavits submitted by Colom. It also contended that whatever the fees, the amount should not be increased for contingency or delay.

## II.

Reviewing the Islamic Center's application for an award of attorney's fees according to the 12 factors listed in *Johnson v. Georgia Highway Express, Inc.*,[1] the district court awarded Colom and Harmon $29,268.75 in attorney's fees, and $2,499.15 in expenses. Neither party contests the award of expenses.

The court determined the amount of attorney's fees by first calculating the "lodestar": multiplying the number of hours each attorney had worked by his hourly rate. The court found that Colom should be reimbursed for 261 hours of work, rather than the 272⅓ hours claimed, and Harmon for 48¾ hours, rather than the 63¼ hours claimed. Neither party contests this finding. The court then set Colom's hourly rate at $100 and Harmon's at $65, finding that these billing rates "reflect[ed] the customary fee for similar work in the commu-

1. 488 F.2d 714 (5th Cir.1974).

nity and is a fair and reasonable fee which will adequately compensate counsel for their skill and efforts." From these figures, the court calculated the lodestar as follows:

| Attorney | Compensable Hours | Allowable Rate | Lodestar Fee |
|---|---|---|---|
| Wilbur O. Colom | 261 | $100.00 | $26,100.00 |
| Dennis Harmon | 48.75 | 65.00 | 3,168.75 |
| | | | $29,268.75 |

The court refused to enhance this amount. It found that the case was neither "novel [n]or difficult," and there was, therefore, no need to recompense counsel for taking any "unusual risk[s]." Although it found Colom to be a "very able and experienced civil rights litigator" whose "expertise in the constitutional arena has commanded the respect of th[e] court on many occasions," the court held that the "skill required ha[d] been adequately considered" in the original lodestar computation. The court declined to enhance the award based on counsel's contingent-fee arrangement, stating that there were "no unusual circumstances in this case." The court made no express finding concerning whether such an increase was necessary to induce competent counsel to accept such cases in the future, nor did it address whether the lodestar should be enhanced based upon the delay in payment of fees for legal services that Colom and Harmon had begun to render in 1985.

### III.

42 U.S.C. § 1988 provides, in relevant part:

In any [civil-rights] action or proceeding, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

When the district court awards a fee pursuant to this statute, we review the district court's award only for an abuse of discretion.[2] Such a review, however limited, is possible only if the district court "provide[s] a concise but clear explanation of its reasons for the fee award," for "mere conclusory statement[s]" regarding the reasonableness of a fee are insufficient to withstand appellate review.[3]

### IV.

■ Colom contends that the district court erroneously calculated the lodestar when it fixed his and his associate's hourly rates at $100 and $65 per hour, respectively. While our review of the total award of attorney's fees is predicated on the precept that the award may be overturned only if the district court abused its discretion, a district court's determination of a "reasonable hourly rate" is a finding of fact subsidiary to the ultimate award and is, therefore, reviewable under the clearly-erroneous rubric.[4]

In *Blum v. Stenson*,[5] the Supreme Court instructed district courts to calculate attorney's fees under section 1988 "according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."[6] To "inform and assist" the district court in ascertaining the hourly rate at

2. *Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct.1933, 1941, 76 L.Ed.2d 40 (1983); *see Georgia Highway Express,* 488 F.2d at 717.

3. *Hensley,* 461 U.S. at 437, 439 & n. 15, 103 S.Ct. at 1941, 1942–43 & n. 15; *see Nisby v. Commissioners Court,* 798 F.2d 134, 137 (5th Cir.1986); *Riddell v. National Democratic Party,* 712 F.2d 165, 170 (5th Cir.1983); *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1092 (5th Cir. 1982), *remanded in part,* 701 F.2d 542 (5th Cir. 1983) (en banc); *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 584 (5th Cir.1980), *modified in part on other grounds,* 684 F.2d 1087 (1982) *and* 701 F.2d 542 (1983) (en banc); *Davis v. Fletcher,* 598 F.2d 469, 470–71 (5th Cir.1979); *cf. Brantley v. Surles,* 804 F.2d 321, 325–26 (5th Cir.1986).

4. *See Leroy v. City of Houston,* 831 F.2d 576, 584 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988); *Cobb v. Miller,* 818 F.2d 1227, 1231 (5th Cir.1987); *Brantley,* 804 F.2d at 327; *Copper Liquor,* 684 F.2d at 1094; *Georgia Highway Express,* 488 F.2d at 717; *Black Grievance Comm. v. Philadelphia Elec. Co.,* 802 F.2d 648, 652 (3rd Cir.1986), *vacated and remanded on other grounds,* —— U.S. ——, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987).

5. 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

6. *Id.* at 895, 892–94 & nn. 6 & 9, 104 S.Ct. at 1547, 1546 & n. 6 & 9 (footnote omitted).

which attorneys are remunerated in the prevailing market, the Court required fee applicants

> to produce satisfactory evidence—in addition to the attorney's own affidavits— that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable.... [7]

*Blum* did not address, however, the circumstances under which a court may fix a rate other than the requested rate when that requested rate is not only the attorney's billing rate, but is also "in line with" rates "prevailing in the community for similar services by lawyers" who are reasonably comparable.[8]

■ When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed.[9] When that rate is not contested, it is *prima facie* reasonable. When the requested rate of compensation exceeds the attorney's usual charge but remains within the customary range in the community, the district court should consider whether the requested rate is reasonable. In doing so,

the district court may increase the billing rates of attorneys in private practice who pursue noneconomic interests by "intentionally charg[ing] their poorer clients reduced rates,"[10] since this adjustment would further the primary goal announced in *Blum:* standardizing among different parts of the private and public bar the hourly rate at which attorney's fees are awarded.[11] If the opposing party, on the other hand, urges that the fees be based on a rate lower than the prevailing attorney's usual charge, even though that amount is within the community-accepted range, that party should at least adduce some evidence to support its position that, under the circumstances, the requested rate is not reasonable.

■ If, from the range of market rates invariably submitted by the parties,[12] the court chooses an hourly rate different from the attorney's customary billing rate, it must articulate its reasons for doing so.[13] "[W]e simply must be provided reasons for the figures selected to be able to review the award."[14]

■ In this case, the district court neither cited any evidence in the record nor gave any other reasons to support its reduction of Colom's and Harmon's hourly billing rates although these rates conceded-

7. *Id.* at 895 n. 11, 104 S.Ct. at 1547 n. 11; *see Wheeler v. Mental Health & Mental Retardation Auth.,* 752 F.2d 1063, 1073 (5th Cir.), *cert. denied,* 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985).

8. *Compare Thompson v. Kennickell,* 836 F.2d 616, 620 (D.C.Cir.1988); *Laffey v. Northwest Airlines,* 746 F.2d 4, 25 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985), *overruled in part, Save Our Cumberland Mountains Inc. v. Hodel,* 857 F.2d 1516, 1518–24 (D.C.Cir.1988) (en banc); *Shakopee Mdewakanton Sioux Community v. City of Prior Lake,* 771 F.2d 1153, 1159–61 (8th Cir.1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1185, 89 L.Ed.2d 301 (1986) *with Save Our Cumberland Mountains,* 857 F.2d at 1524; *Student Public Int. Res. Group v. AT & T Bell Lab.,* 842 F.2d 1436, 1443–50 (3rd Cir.1988); *Norman v. Housing Auth.,* 836 F.2d 1292, 1299–1301 (11th Cir.1988); *Lightfoot v. Walker,* 826 F.2d 516, 524–25 (7th Cir.1987); *Save Our Cumberland Mountains, Inc. v. Hodel,* 826 F.2d 43, 55–60 (D.C.Cir.1987) (Wald, J., concurring in part, dissenting in part), *modified in part,* 857 F.2d 1516 (1988) (en banc); *Black Grievance Comm.,* 802 F.2d at 652–53; *Neely v. City of Grenada,* 624 F.2d 547, 550–51 (5th Cir. 1980).

9. *See Lightfoot,* 826 F.2d at 524; *Mayson v. Pierce,* 806 F.2d 1556, 1563 (11th Cir.1987) (Clark, J., dissenting).

10. *Save Our Cumberland Mountains,* 857 F.2d at 1520, 1524; *see Student Public Int. Res. Group,* 842 F.2d at 1449, 1450.

11. *See Blanchard v. Bergeron,* —— U.S. ——, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989).

12. *See Norman,* 836 F.2d at 1300–01.

13. *See Black Grievance Comm.,* 802 F.2d at 652–53.

14. *Sims v. Jefferson Downs Racing Ass'n,* 778 F.2d 1068, 1085 (5th Cir.1985); *see Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir.1987).

ly fell squarely within the range of prevailing market rates. For the court to state that the reduced rate was "fair and reasonable" and "adequately compensate[d] counsel" does not reveal why it reduced what appears to be a reasonable rate or how it actually chose the reduced figures. Such conclusory statements do not provide a clear and concise explanation of the court's decision to reduce an attorney's billing rate when both litigants and the court acknowledge that that rate is within the prevailing market rate. While we recognize and sympathize with the burdens imposed by fee disputes on busy trial courts, their exposition of the basis for their conclusion, even by oral statements from the bench, is indispensable to our performance of our duties.

The district court's reduction in Colom's and Harmon's hourly billing rate is particularly difficult to comprehend when viewed in conjunction with the court's denial of a contingency enhancement.[15] An attorney who accepts a case in which payment is to be made only if victory is achieved would increase, not decrease, his normal hourly billing rates in order to compensate for the risk that he might lose the case and receive no payment at all.[16] The district court's decision, therefore, requires explanation.[17]

Accordingly, we remand the case to the district court so that it may set Colom's and Harmon's hourly rates, articulate its reasons for doing so, and, if it chooses not to use their usual billing rates, state why it deviates from them.

## V.

Colom contends that the district court abused its discretion when it refused to enhance the lodestar to account for the fact that he accepted the case on a no-win no-pay basis. The propriety of contingency enhancements under section 1988 is governed by the Supreme Court's decision in Pennsylvania v. Delaware Valley Citizens' Council (*Delaware Valley Citizens' Council II*),[18] in which the Court refused to enhance a lodestar 100% despite the fact that counsel had been retained on a contingency basis.

Writing for the plurality, Justice White, joined by the Chief Justice and Justices Powell and Scalia, concluded that "the risk of losing a lawsuit" may not be "an independent basis for increasing the amount of an otherwise reasonable fee ... under the usual fee-shifting statutes."[19] At the close of its opinion, however, the plurality noted that, were the Court to permit contingency enhancements, it should limit them to the "exceptional cases" in which "there [is] evidence in the record, and the trial court ... so find[s], that without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market."[20]

In a separate concurrence, Justice O'Connor found that while "the circumstances of this case" did not justify a contingency enhancement, "Congress did not intend to foreclose consideration of contingency in setting a reasonable fee under fee-shifting provisions such as ... 42 U.S.C. § 1988."[21] In contrast to the four dissenters, who would increase an award of attorney's fees to compensate for "the fact of contingency" itself,[22] Justice O'Connor would enhance a lodestar for contingency only if the applicant could establish that (1) "without

---

**15.** *See infra* Part V.

**16.** *See Student Public Int. Res. Group,* 842 F.2d at 1446–47; *Schneider v. Atlanta,* 628 F.2d 915, 920–21 (5th Cir.1980), *overruled on other grounds, Bennett v. Slidell,* 735 F.2d 861 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *Knighton v. Watkins,* 616 F.2d 795, 800–01 (5th Cir.1980).

**17.** *See Hart v. Walker,* 720 F.2d 1436, 1442 (5th Cir.1983).

**18.** 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

**19.** *Delaware Valley Citizens' Council II,* 483 U.S. at 725–26, 107 S.Ct. at 3086–87 (White, J., plurality opinion).

**20.** *Id.* at 729–31, 107 S.Ct. at 3088–89 (White, J., plurality opinion) (footnote omitted).

**21.** *Id.* at 731, 107 S.Ct. at 3089 (O'Connor, J., concurring in part and concurring in the judgment).

**22.** *Id.* at 747, 107 S.Ct. at 3098 (Blackmun, J., dissenting).

an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding [competent] counsel in the local or other relevant market,'" and (2) the market rate of "compensation for ... contingent fee cases *as a class*" was different from cases in which payment was certain, win or lose.[23]

Justice O'Connor concurred in the plurality opinion on the narrowest grounds, and her position is the only view to which a majority of the Court, and perhaps even the whole Court, could subscribe. Every circuit, including our own, that has considered contingency enhancements since *Delaware Valley Citizens' Council II* has, therefore, accepted Justice O'Connor's "guidelines"[24] as the authoritative pronouncement[25] of when a contingency enhancement is permissible under section 1988.[26] By permitting contingency enhancements under the limited circumstances envisioned by Justice O'Connor, we allow attorneys to "accept apparently just causes without awaiting sure winners,"[27] and to pursue injunctive and declaratory relief as readily as damages, obtaining remedies that redress not only the harm visited upon the individual claimant, but remedies that may redound in significant public benefits as well.[28]

Colom submitted several affidavits to the district court to establish, as Justice O'Connor's opinion requires, that the Islamic Center would have faced substantial difficulty retaining competent counsel in the local market if counsel were not provided a contingency enhancement, and that contingency cases are usually compensated differently from noncontingency cases. In his own affidavit, Colom declared:

> Had we not anticipated an enhancement of our fee, we would not have undertaken the case, nor would any other attorney with an active practice.... [T]his firm and most others in this area[] would not accept such cases on a contingency basis [without enhancement] and civil rights would largely go undefended.

Colom submitted affidavits from two other attorneys in the area attesting:

> Contingency cases as a group or a class are treated differently in this area. An attorney handling such cases can expect to receive a fee of two or three times their [sic] regular hourly rate. Lawyers in this area would be unlikely to accept such contingency cases unless a higher

**23.** *Id.* at 731–34, 107 S.Ct. at 3089–91 (O'Connor, J., concuring in part and concuring in the judgment) (emphasis in original) (citing *id.* at 730–31, 107 S.Ct. at 3089 (plurality opinion)); *cf. Blanchard,* — U.S. at —, 109 S.Ct. at 944; *City of Riverside v. Rivera,* 477 U.S. 561, 580, 106 S.Ct. 2686, 2697, 91 L.Ed.2d 466 (1986) (Brennan, J., plurality opinion) (citing S.Rep., at 6, U.S.Code Cong. & Admin.News 1976, p. 5913); *Hensley,* 461 U.S. at 430 n. 4, 103 S.Ct. at 1938 n. 4.

**24.** *Delaware Valley Citizens' Council II,* 483 U.S. at 734, 107 S.Ct. at 3091 (O'Connor, J., concurring in part and concurring in the judgment).

**25.** *See Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977).

**26.** *See McKenzie v. Kennickell,* 875 F.2d 330 (D.C.Cir.1989); *City of Houston,* 831 F.2d at 583–84; *Fadhl v. City and County of San Francisco,* 859 F.2d 649, 651 n. 1 (9th Cir.1988); *Wells v. Bowen,* 855 F.2d 37, 44–45 (2d Cir.1988); *Spell v. McDaniel,* 852 F.2d 762, 765–66 (4th Cir. 1988); *Weisberg v. U.S. Dep't. of Justice,* 848 F.2d 1265, 1272 (D.C.Cir.1988); *Student Public Int. Res. Group,* 842 F.2d at 1451–52; *Jenkins by AGYEI v. Missouri,* 838 F.2d 260, 267–68 (8th Cir.), *cert. granted in part,* — U.S. —, 109

S.Ct. 218, 102 L.Ed.2d 209, *cert. denied in part,* — U.S. —, 109 S.Ct. 221, 102 L.Ed.2d 212 (1988); *Kennickell,* 836 F.2d at 621; *Friends of the Earth v. Eastman Kodak Co.,* 834 F.2d 295, 298 (2d Cir.1987); *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 379–80 & n. 11 (3rd Cir.1987); *Catlett v. Missouri Highway and Transp. Comm'n,* 828 F.2d 1260, 1271 (8th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988); *Crumbaker v. Merit Systems Protection Bd.,* 827 F.2d 761 (Fed.Cir.1987); *Save Our Cumberland Mountains,* 826 F.2d at 53 n. 6; *Spell v. McDaniel,* 824 F.2d 1380, 1404–05 & n. 23 (4th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 752, 98 L.Ed.2d 765, *modified in part on other grounds,* 852 F.2d 762 (4th Cir. 1988).

**27.** *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981), *amended, Ledbetter v. Jones,* 453 U.S. 911, 101 S.Ct. 3141, 69 L.Ed.2d 993 (1981).

**28.** *See Blanchard,* — U.S. at —, 109 S.Ct. at 945–46; *City of Riverside,* 477 U.S. at 573–79, 106 S.Ct. at 2694–96 (Brennan, J., plurality opinion); *Hensley,* 461 U.S. at 444 n. 4, 103 S.Ct. at 1945 n. 4 (Brennan, J., concurring in part and dissenting in part).

than regular hourly rate was obtained. This rural market has very few attorneys familiar with Federal Civil Rights Litigation. Without a substantial enhancement for contingency cases, there would be, as a practical matter, no attorney willing to accept these types of cases on a contingency basis.... Without enhancement of fees, I feel confident that the local legal market would not provide competent counsel to represent plaintiffs on a contingency fee basis in such cases.

The City of Starkville presented no affidavits or any other evidence contradicting the affidavits Colom proffered. In response to questions at oral argument on appeal, however, Colom admitted that "there has been no award that I know of in the Northern District [of Mississippi] of a [contingency] enhancement" in a civil-rights case.

The district court denied Colom's request for a contingency enhancement, stating:

One of the objectives in enacting § 1988 was to encourage attorneys to accept civil rights cases. This section was not intended as a "windfall" for attorneys who prevail in these cases and seek to recoup losses sustained in other litigation ventures. Indeed, it would be grossly unfair and highly prejudicial to the defendant to require it to double or triple the customary attorney's fee award simply because it sought to have a United States court decide the issue in this case. There are no unusual circumstances in this case which justify an enhancement of the fee.

The district court made no findings concerning the two issues Justice O'Connor had found decisive in *Delaware Valley Citizens' Council II.*

■ Justice O'Connor's instructions in *Delaware Valley Citizens' Counsel II* are explicit: the district court must consider whether a contingency enhancement would have been necessary to induce competent counsel to accept such cases at the time the case was undertaken [29] and whether contingency cases as a class were treated differently from noncontingency cases. Neither the absence of unusual circumstances nor the disproportionate compensation of attorneys in a particular case addresses the specific questions posed by Justice O'Connor. The district court failed to make the requisite findings of fact determinative of the fee enhancement issue.

■ The party seeking enhancement of an award of attorney's fees for risk of loss bears the burden of proof under Justice O'Connor's two-part test.[30] Whether the three affidavits adduced by Colom satisfy his burden of proof under that test is a determination of fact to be made by the district court in the first instance.[31] Because the district court failed to use the correct legal standard to evaluate the evidence presented to it, we remand the case so that it may apply the proper legal standard and make the necessary findings of fact to determine whether to award Colom a contingency enhancement.

## VI.

Colom also contends that he is entitled to have his attorney's fees enhanced beyond the lodestar because of delay in payment. In *Delaware Valley Citizens' Council II,* the Supreme Court unanimously sanctioned the adjustment of lodestars for the delayed payment of attorney's fees. The four dissenters declared emphatically that "delay in payment ... is an integral aspect of contingency payments for which compensation is appropriate,"[32] and the plurality, with the concurrence of Justice O'Connor, found "adjustments for delay ... [ ]consistent with the typical fee-shifting

---

29. See *McKenzie v. Kennickell,* 875 F.2d at 332.

30. *Delaware Valley Citizens' Council II,* 483 U.S. at 731–34, 107 S.Ct. at 3090–91 (O'Connor, J., concurring in part and concurring in the judgment).

31. See *City of Houston,* 831 F.2d at 584; *Wood v. Sunn,* 852 F.2d 1205, 1213 (9th Cir.1988); *Weis-*berg, 848 F.2d at 1272–73; *Kennickell,* 836 F.2d at 621; *Conklin v. Lovely,* 834 F.2d 543, 553–54 (6th Cir.1987); *Witco Chem. Corp.,* 829 F.2d at 379–82.

32. *Delaware Valley Citizens' Council II,* 483 U.S. at 750, 107 S.Ct. at 3099 (Blackmun, J., dissenting) (footnote omitted).

statute."[33]  The plurality observed that when

> lawyers are not paid until a favorable decision finally eventuates, which may be years later, ... courts have regularly recognized the delay factor, either by basing the award on current rates [charged by the attorney to fee-paying clients] or by adjusting the fee based on historical rates to reflect its present value.[34]

Accordingly, the courts of appeals have repeatedly upheld the propriety of delay enhancements.[35]

Colom accompanied his request for a delay enhancement with an affidavit stating that he charges his "regular monthly clients ... 1½% per month for all accounts over 30 days past due. (The rate on judgments is 8% per year or .67% per month.)" Colom then listed his monthly bills for the Islamic Center from December, 1984 through April, 1988, indicating the amount due in each statement, the number of months each bill had been past due, and the amount of interest that would have accrued through April 25, 1988 if Colom had charged the Islamic Center either the rate he charged a regular client or the legal rate of interest in Mississippi.

■ Despite Colom's request and affidavit, the district court failed to consider whether it should enhance the lodestar based on delayed payment. If it did not think any delay enhancement was warranted, the district court should have stated its reasons. Because the district court's failure to "explain its reasons for the attorney's fee it awards" renders our review impossible,[36] we remand this issue to the district court.

■ If the district court calculated the lodestar using historical billing rates—the rates in effect at the time the attorney rendered his services—the court should compensate for belated payment by increasing the lodestar by the rate of inflation from the time services were provided to the date of judgment.[37] Post-judgment interest should then be awarded under 28 U.S.C. § 1961 for the period following the determination of the fee until its actual payment.[38]

■ If the lodestar was based on the attorneys' current billing rates, the court must still address whether a delay enhancement is warranted. Were courts to assume, as we and others have done,[39] that

---

**33.** *Id.* at 716, 107 S.Ct. at 3082 (White, J., plurality opinion); *id.* at 734, 107 S.Ct. at 3091 (O'Connor, J., concurring in part and concurring in the judgment).

**34.** *Id.* at 716, 107 S.Ct. at 3081 (White, J., plurality opinion); *see Missouri v. Jenkins*, —— U.S. ——, 109 S.Ct. 1930, 104 L.Ed.2d 402 (1989); *cf. Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

**35.** *See, e.g., Van Ooteghem v. Gray*, 774 F.2d 1332, 1338 (5th Cir.1985); *Spell*, 852 F.2d at 772; *Student Public Int. Res. Group*, 842 F.2d at 1453; *Jenkins by AGYEI*, 838 F.2d at 265–66; *Coup v. Heckler*, 834 F.2d 313, 324–25 (3rd Cir.1987); *Lightfoot*, 826 F.2d at 523; *Multnomah County*, 815 F.2d at 1262–63 n. 7; *Black Grievance Comm.*, 802 F.2d at 655–56; *Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir.1986); *Gaines v. Dougherty County Bd. of Educ.*, 775 F.2d 1565, 1572 (11th Cir.1985); *Institutionalized Juveniles v. Secretary of Pub. Welfare*, 758 F.2d 897, 922–24 (3rd Cir.1985); *Murray v. Weinberger*, 741 F.2d 1423, 1432–33 (D.C.Cir.1984); *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983); *Johnson v. University College of the Univ. of Ala.*, 706 F.2d 1205, 1210–11 (11th Cir.1983); *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C.Cir.1980) (en

banc); *cf. Clark v. City of Los Angeles*, 803 F.2d 987, 992–93 (9th Cir.1986); *Sisco v. J.S. Alberici Constr. Co.*, 733 F.2d 55, 59 n. 3 (8th Cir.1984).

**36.** *Nisby*, 798 F.2d at 137; *see Copper Liquor*, 624 F.2d at 583; *Sims*, 778 F.2d at 1085.

**37.** *See Van Ooteghem*, 774 F.2d at 1338.

**38.** *See Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544–45 (5th Cir.1983) (en banc); *In re Burlington Northern, Inc., Employment Practices Litigation*, 810 F.2d 601, 609 (7th Cir. 1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 82, 98 L.Ed.2d 44 (1987); *Black Grievance Comm.*, 802 F.2d at 656.

**39.** *See City of Houston*, 831 F.2d at 584; *Lightfoot*, 826 F.2d at 523–24; *Lamm*, 713 F.2d at 555; *cf. Multnomah County*, 815 F.2d at 1262–63 n. 7; *Black Grievance Comm.*, 802 F.2d at 655–56; *Institutionalized Juveniles*, 758 F.2d at 923 & n. 41; *Murray*, 741 F.2d at 1432–33; *University College*, 706 F.2d at 1210–11; *J.S. Alberici Constr. Co.*, 733 F.2d at 59 n. 3; *Copper Liquor*, 684 F.2d at 1096 n. 26; *Copeland*, 641 F.2d at 893 & n. 23.

using current billing rates to calculate a lodestar automatically obviates the need for a delay enhancement, attorneys whose rates have not changed since they rendered the legal services may not be compensated for the lost time-value of the delay in payment. We, therefore, also direct that, upon remand, the district court state its conclusions and explain its reasons for either denying or granting a delay enhancement, and, if it does award Colom a delay enhancement, state how its enhancement recompenses Colom for the lost time-value of the delayed payment.[40]

## VII.

For the foregoing reasons, the judgment is affirmed insofar as it awards expenses to the prevailing plaintiff, but the case is remanded to the district court for reconsideration of Colom's and Harmon's hourly rates, and whether the attorney's fees awarded to them should be enhanced because they represented the Islamic Center on a contingency-fee basis and their receipt of the amount they had earned was delayed. The court may decide these issues based solely on the record before it or, if necessary, conduct an evidentiary hearing. In either case, the court shall articulate its reasons for granting or denying each of Colom's claims.

AFFIRMED in part, REVERSED in part, and REMANDED.

GARWOOD, Circuit Judge, partially dissenting:

I concur in all except part IV of the majority opinion. However, I am unable to agree with the holding that the particular attorney's "customary billing rate" is presumptively the appropriate hourly lodestar rate, any deviation from which must be in some manner specifically justified by the evidence and explained by the district court even though the rate ultimately used is well within the community's prevailing range of market rates for similar services by lawyers of reasonably comparable skill, experience, and reputation.

It seems to me that introducing such a presumption, with its attendant burden shifting and requirement for special explanations, likely will unduly complicate and formalize the fee fixing process and ultimately operate to reduce the district court's discretion and enhance the role of appellate courts in these matters. Moreover, whether a particular attorney's asserted billing rate has been sufficiently customary, or more of a goal than a reality, or usually applied to this kind of case, and the like, may well become the subject of satellite factual disputes, distracting effort and attention from resolution of the ultimate question of reasonableness. So, too, as to whether the attorney's lower rates for some clients justify an exception, which may involve exploration of whether the attorney has thereby really been pursuing noneconomic interests, whether these favored clients were sufficiently poor (or perhaps otherwise "deserving") and the like. All this runs counter to the thrust of the Supreme Court's admonitions in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct.1933, 1941, 76 L.Ed.2d 40 (1983), that

"[a] request for attorney's fees should not result in a second major litigation. . . .

"We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."

The basic "purpose of § 1988 was to make sure that competent counsel was available to civil rights plaintiffs." *Blanchard v. Bergeron*, —— U.S. ——, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989). The legislative history reflects that the fees awarded should be " 'adequate to attract competent counsel, but ... not produce windfalls to attorneys.' " *Id.* 109 S.Ct. at 943 n. 6 (quoting S.Rep. No. 94–1011, p. 6 (1976), U.S.Code Cong. & Admin.News 1976, p. 5913). Counsel is not entitled to, or limited by, her agreed fee, and that is

---

40. *See Institutionalized Juveniles,* 758 F.2d at 923 & n. 41.

simply one of several factors to be considered on the ultimate issue of reasonableness. *Blanchard,* at 944. The same should be true for the attorney's "customary billing rate." What is at issue is the reasonableness of the awarded rate "calculated according to the prevailing market rates in the relevant community," *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984), "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* n. 11. This is an area where the relevant variables are so numerous and the subject matter so inherently imprecise that the increased administrative burdens of further refinement and formularization are unlikely to be justified by any significant enhancement in precision or reliability. We must ultimately rely on the experience and commonsense judgment of the district judges exercising their discretion and of the court of appeals judges reviewing only for abuse of discretion or legal error.