IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

------------------------------

Nos. 93-7741 & 93-7784

------------------------------

LDDS COMMUNICATIONS, INC.
and DIAL-NET, INC.,

                                        Plaintiffs-Appellees,

                        versus

AUTOMATED COMMUNICATIONS, INC.
and JUDY VAN ESSEN,

                                        Defendants-Appellants.

------------------------------

Appeals from the United States District Court
for the Southern District of Mississippi

------------------------------

(October 3, 1994)

Before HIGGINBOTHAM, JONES, and BARKSDALE, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

     This is an appeal from a preliminary injunction enforcing covenants not to compete, which are contained in provisions of contracts for the sale of assets in the market for long distance and direct dial services.  Covenants not to compete can be an element of purchased assets and are enforceable as a general proposition, despite hostility toward most such collusive carvings of markets.  At the same time, a sale of assets is not a pass from the antitrust laws.  The key is that such covenants must be ancillary to the sale, a reasonable protection of what was sold, goodwill, for example.

The disputed language of two of the covenants is unclear in meaning at its most critical point, the geographical area in which competition was not to occur. The district court read the two covenants as exacting a nationwide cease fire although they were part of a sale of assets in Arizona and New Mexico. We resolve their ambiguity in favor of the lesser restraint and are persuaded that these two covenants not to compete are not fairly read to reach beyond Arizona and New Mexico. A third covenant not to compete, part of a sale of assets in Minnesota, did not contain a geographical limit but excepted from its limits activity of defendant Judy Van Essen conducted through defendant Automated Communications, Inc. (ACI). ACI was not a party to that agreement. Because the parties have not adduced any evidence of activity inside New Mexico or outside the ACI exception, we vacate the injunction.

I

LDDS Communications and ACI provide long-distance telecommunications services throughout the country. In November 1991, ACI agreed to sell various business assets in New Mexico to LDDS. As part of that deal, ACI and Judy Van Essen, ACI's president and majority shareholder, entered into noncompetition covenants with LDDS. The agreements also provided that they were to be governed by Mississippi law.

In 1993, LDDS through a statutory merger acquired Dial-Net, an independent South Dakota telecommunications company based in Minnesota. Van Essen owned 10.8% of the stock in Dial-Net. On

March 19, 1993, as part of the closing, Van Essen executed a covenant not to compete with LDDS or Dial-Net. ACI was not involved in the transaction. The parties appear to have applied South Dakota law to these covenants not to compete. There is no suggestion that the laws of South Dakota and Mississippi differ in ways relevant to our disposition of this appeal.

Meanwhile, in early 1993, Dial-Net employees were concerned about the upcoming acquisition. ACI representatives, including Van Essen, contacted Dial-Net employees about joining ACI. By April, ACI had hired several former Dial-Net employees, including some sales representatives. Several former Dial-Net clients began using ACI in subsequent months.

In July 1993, LDDS and Dial-Net sued ACI and Van Essen and moved for a temporary restraining order and preliminary injunction to keep ACI and Van Essen from soliciting Dial-Net's employees and clients. An agreed injunction was entered in August. After a hearing in September, the district judge signed findings of fact and conclusions of law prepared by LDDS and decided to continue the injunction. This appeal followed.

## II

The requirements for a preliminary injunction are rote. A party seeking a preliminary injunction must show (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result to the nonmovant from the injunction; and (4) that the injunction will not

3

be adverse to the public interest.  <u>See</u>, <u>e.g.</u>, <u>Roho, Inc. v. Marquis</u>, 902 F.2d 356, 358 (5th Cir. 1990).

Whether success is likely first depends on whether the noncompetition covenants barred ACI and Van Essen from soliciting Dial-Net employees.  Three contractual clauses are relevant, all of which are the fifth paragraphs of the contracts in which they appear.  The first two were executed during the ACI asset purchase in New Mexico.  The one executed by ACI provides that it will not:

> directly or indirectly, for a period of three (3) years following the date hereof, (i) own, manage, operate, control, be employed or engaged by or otherwise participate or have any interest in any Person which is engaged in, or otherwise engaged in, the Business in this State of New Mexico, or (ii) otherwise solicit, divert, take away, interfere with or disrupt relationships with, or attempt to do any of the foregoing with respect to, any customer, supplier, employee, independent contractor, agent or representative of LDDS.

Van Essen agreed not to:

> (i) own, manage, operate, control, be employed or engaged by or otherwise participate or have any interest in any Person which is engaged, or otherwise engaged in, the Business in the States of Arizona or New Mexico, or (ii) otherwise solicit, divert, take away, interfere with or disrupt relationships with, or attempt to do any of the foregoing with respect to, any customer, supplier, employee, independent contractor, agent or representative of LDDS.

In connection with the Dial-Net merger, the agreement Van Essen signed said that for two years she would not:

> (i) own, manage, operate, control, be employed or engaged by or otherwise participate or have any interest in any Person which is engaged in, or otherwise engage in, the Business in any state in the United States in which as of the date of this Agreement, LDDS or Dial-Net currently conducts operations, or (ii) otherwise knowingly solicit, divert, take away, interfere with or disrupt relationships with, or attempt to do any of the foregoing

4

with respect to, any customer, supplier, employee, independent contractor, agent or representative of LDDS.

1

Our first question is whether the first two covenants bar ACI and Van Essen from soliciting Dial-Net employees and business. ACI argues that the geographical limitations in the first clause of each covenant applies to the second clause. As it reads the covenants, the first clause operates to keep ACI and Van Essen from directly competing in certain places, while the second clause operates to keep them from indirectly competing in those same places.[1] LDDS counters that the first clause contains a geographical limitation while the second clause does not. It also argues that imposing a geographic limitation on the second clause would make it redundant of the first because it is not possible to steal clients inside a state without doing business within that state.

ACI's interpretation is more plausible. It argues, quoting Professor Corbin, that a noncompetition covenant signed at the same time a business is sold is designed to give the buyer "the enjoyment of that for which he pays" by keeping the seller from immediately reacquiring its old customers. See 6A A. Corbin, Corbin on Contracts § 1385, at 48 (1962); see also Sivley v. Cramer, 61 So. 653 (Miss. 1913). It makes sense that ACI would

_____

[1]In its reply brief, ACI observes that all three provisions refer only to the solicitation of LDDS employees. The employees ACI solicited worked for Dial-Net, a wholly-owned subsidiary of LDDS. This covenant also refers to "agent[s]," however, and the Dial-Net employees would seem to qualify.

5

agree to stay away while LDDS got its new business underway. We are pointed to no sensible business reason why ACI would contract away its right to compete with LDDS across the country, just for the sake of selling some assets in one state. LDDS argues that the noncompetition covenant "remove[s] any possible temptation that the seller may have to take advantage of the relationship with its former employees to obtain information on the purchaser's business elsewhere," but this argument only justifies a ban on soliciting former employees rather than one on any solicitation across the country.

Further, the redundancy LDDS complains about is not impressive. The first clause can be read as referring to a direct ownership or control interest, while the second clause refers to the work of agents, consultants, and other entities in which ACI would not have an ownership interest.

2

The Dial-Net noncompetition covenant signed by Van Essen does not have a geographical limit. It is subject, however, to "the ACI exception," which provides:

> 6. Certain Exceptions. (a) Notwithstanding any provisions of this Agreement, individual shall not be prohibited from: . . . (iii) owning, managing, operating, controlling, being employed by or engaging in or otherwise participating or having any interest in Automated Communications, Inc. or AC America, Inc., each a Colorado corporation.

ACI argues that this exception allows Van Essen to solicit anyone she wants to, as long as she does so for ACI.

6

LDDS makes two counterarguments. First, it contends that paragraph 6 only modifies the first clause of the noncompetition covenant because the language is similar to that of the first clause. This claim is belied by the use of the words "any provisions" at the beginning of this section. It also does not square with the undisputed fact that Van Essen bargained for the right to stay with her company, not the abstract right to solicit business using subcontractors. She had no reason to insist on language mirroring that of the second clause once she had the right to stay with her company. As discussed, the second clause refers to subcontractors while the first clause refers to direct ownership and action.

LDDS also argues that paragraph 6 is inconsistent with the New Mexico agreements. Its argument would have force if the New Mexico agreements barred solicitation of employees nationwide, because it would not be sensible to allow the company president a power that the company does not have. Even then, though, the clause would not be inconsistent; it would just be moot. Van Essen would have the power to run ACI, but that power would not include the power to solicit LDDS's business. If the New Mexico agreements do not have nationwide effect, however, there is no inconsistency. We have found that they do not reach beyond New Mexico and Arizona.

In sum, paragraph 6 reads as if it was grafted on to an earlier agreement drafted by LDDS. The agreement just does not make sense otherwise. Paragraph 5 is drafted to keep Van Essen insiders out of the industry entirely for two years, yet paragraph

7

6 gives Van Essen an exemption to work at a key competitor of Dial-Net.  We construe this inconsistency against LDDS.

IV

We will not write a contract for the parties.  We may think that a contract was unwise or foolish, but that is no business of the courts.  The impracticability of an urged reading becomes relevant when its level of foolishness and ambiguity creates uncertainty about what the parties agreed to.  Here the hostility toward restraints of trade takes over, as we insist that the restraint be tailored to protection of the asset sold.  This tailoring resolves the ambiguity inherent in the contract language in favor of the lesser and legal restraint, and we enforce the contract by its terms.  This approach cuts in both directions.  It limits LDDS's and Dial-Net's protection but gives it protection for the lesser area, rather than voiding the entire covenant not to compete.  This resolution of ambiguity is also supported by the parties' conduct after entering into the contract.  See UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc., 525 So. 2d 746, 754 (Miss. 1987).  LDDS and Dial-Net did not read the contracts as they now do until this suit was filed in 1993.

The two noncompetition covenants signed as part of the New Mexico asset purchase do not prohibit solicitation of LDDS clients and employees nationwide.  The agreement signed by Van Essen does do so, but contains a sweeping exception that allows her to continue with ACI.  There is no evidence that defendants breached

8

any enforceable provision of a noncompetition covenant, and the district court erred in issuing the injunction.  We do not reach the parties' other contentions.

REVERSED AND REMANDED.