**WORLDCOM, INC., (Formerly LDDS Communications, Inc.), and Dial–Net, Inc., Plaintiffs,**

v.

**AUTOMATED COMMUNICATIONS, INC., and Judy Van Essen, Defendants.**

**No. 3:93–CV–463WS.**

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 26, 1999.

R. David Kaufman, Brunini, Grantham, Grower & Hewes, Charles P. Adams, Jr., Adams and Reese, Jackson, MS, for Plaintiffs.

Steven Mark Wann, Maxey, Wann, Begley & Fyke, PLLC, Jackson, MS, Gary F. Albrecht, Denver, CO, R. David Kaufman, Brunini, Grantham, Grower & Hewes, Charles P. Adams, Jr., Adams and Reese, Jackson, MS, for Defendants.

## ORDER GRANTING ATTORNEY'S FEES

WINGATE, District Judge.

Here in this court pursuant to diversity-of-citizenship jurisdiction, Title 28 U.S.C. § 1332,[1] this case was tried before the court sitting without a jury. On February 2, 1998, after all parties had rested in their presentation of proof, and after all parties had exercised their opportunity to present closing summations, this court entered a Memorandum Opinion and Order in accordance with Rule 52[2] of the Federal Rules of Civil Procedure which found the defendants liable for breach of contract, but rejected the plaintiffs' claims for fraud and misrepresentation; for securities fraud; for intentional tortious interference with a contractual relationship and business advantage; for misappropriation of trade secrets and confidential information; and for civil conspiracy. Thereafter, this court entered an Order finding the defendants liable for monetary damages in the amount of $358,909.69. Now, plaintiffs bring their request for attorney's fees and expenses pursuant to Rule 15 of the Uniform Rules of this court which provides in pertinent part that "all motions for attorney's fees to be awarded by law as part of the costs of the action, whether provided for by statute or otherwise, shall be served by the prevailing party to whom costs are awarded not later than 30 days after entry of judgment."[3]

■ This court has jurisdiction over this matter predicated upon diversity of citizenship and upon the amount in controversy being in excess of $50,000.00 in accordance with the version of Title 28 U.S.C. § 1332 in effect at the time this lawsuit was filed. Since this court's jurisdictional grant is diversity of citizenship, state law, rather than federal law, governs the issue of the awarding of attorney's fees.[4] *Shelak v. White Motor Company*, 636 F.2d 1069, 1072 (5th Cir.1981), citing *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1310 (5th Cir.1980); *Reynolds v. Allstate Insurance Company*, 629 F.2d 1111, 1116 n. 11 (5th Cir.1980); and 6 *Moore's Federal Practice* ¶ 54.77(2) at 1712–13 (2d ed.1976). Thus, the discretionary authority granted district courts by Rule 54(d) of the Federal Rules of Civil Procedure to award attorney's fees must be exercised within the bounds of applicable state law, since fee awards which contravene state law will not be upheld on appeal. *Shelak*, 636 F.2d at 1069.

As earlier mentioned, this court in its February 2, 1998, Memorandum Opinion and Order found that defendants, Automated Communications, Inc., and Judy Van Essen, had breached their contract with plaintiffs, Worldcom, Inc., and Dial–Net, Inc. The contract at issue, the Dial–Net/WorldCom merger agreement,[5] which

---

1. Title 28 U.S.C. § 1332 provides in pertinent part:

   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

   (1) citizens of different States; ...

2. Rule 52 of the Federal Rules of Civil Procedure provides in pertinent part that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; ..."

3. Plaintiffs' request for attorney fees under Rule 15 was due not later than 30 days after entry of judgment. The court extended this filing deadline upon proper motions of the

plaintiffs to which defendants raised no objections.

4. The award of attorney's fees is part of the substantive right of a suit. *Missouri State Life Insurance Company v. Jones*, 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933).

5. The plaintiffs amended their complaint to assert that the Dial–Net/WorldCom merger agreement itself had been breached by Judy Van Essen. Thus, the breach of contract claims against Van Essen were based on one agreement consisting of several documents, the Dial–Net/WorldCom merger agreement itself which was signed by all parties on December 18, 1992, and became finalized on March 19, 1993, and on the separate noncompete and confidentiality agreement signed by Van Essen individually as a Dial–Net shareholder and which was incorporated into the

was signed by all parties on December 18, 1992, and which became final on March 19, 1993, includes Exhibit P–1, the Agreement and Plan of Merger; Exhibit P–2—the Supplemental Agreement by and among Dial–Net, Inc., (the Company), the Shareholders of the Company, LDDS Acquisition Corporation (an ad hoc creation for the limited purpose of merger) and LDDS Communications, Inc., (now World–Com); Exhibit P–3, the Amended and Restated Agreement and Plan of Merger; and Exhibit P–6, the noncompete and confidentiality agreements signed by Dial–Net's shareholders.

■ Mississippi law allows for an award of attorney's fees in a breach of contract case where the contract language expressly provides for such. *See Greenlee v. Mitchell,* 607 So.2d 97, 108 (Miss.1992); and *Central Bank of Mississippi v. Butler,* 517 So.2d 507, 512 (Miss.1987). In the instant case, no party disputes that the contracts in question provide for the recovery of attorney's fees in the event of breach.[6] Thus, under Mississippi law, this court may award attorney fees and expenses.

■ Mississippi law requires the attorney who rendered the services to show that his legal services were necessary to represent the wronged party as a result of the breach and that the fees for the services rendered were reasonable. *Eastland v. Gregory,* 530 So.2d 172, 175 (Miss.1988). So, while Mississippi courts do not follow the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), which ordinarily guide federal courts in the Fifth Circuit in search of appropriate fee awards, the Mis-

sissippi courts do analyze the necessity and reasonableness of fee requests and review time sheets to determine what the amount of a fee should be. *See Lovett v. Garner,* 511 So.2d 1346, 1354 (Miss.1987) (noting a lack of proof of reasonableness and a failure to produce time sheets as bases for denying fee).

The Fifth Circuit has not yet decided whether the *Johnson* factors should be applied to the determination of a fee award in a diversity case. Nevertheless, the Fifth Circuit has approved the application of the *Johnson* factors where the controlling state law directs the state courts to conduct a similar analysis to determine a reasonable fee. *See Atlantic Richfield Company v. Manges,* 702 F.2d 85, 87 (5th Cir.1983) (applying Texas law). Therefore, since the Mississippi state courts' basic procedure in addressing attorney fee awards is sufficiently analogous to the procedures enunciated in *Johnson,* this court shall apply the *Johnson* factor analysis to the instant fee request.

## I. *LAW APPLICABLE TO FEE CALCULATIONS*

### a. *Overview*

■ The method by which the district court calculates an attorney's fees award is well established. The district court first computes the "lodestar." *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993). The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983); *Louisiana Power &*

---

December 18, 1992, Dial–Net/WorldCom merger agreement (see Exhibit P–6).

**6.** Van Essen's Noncompete and Confidentiality Agreement provides that WorldCom shall be entitled to recover "all costs and expenses, including but not limited to attorneys' fees and court costs, incurred by LDDS as a result or arising out of any breach or threatened breach under or pursuant to this Agreement." (P–6 ¶ 7). Section 9.7 of the merger agree-

ment provides that "[t]his Agreement (including the Exhibits attached hereto) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof ..." The attached Exhibits include the noncompete and confidentiality agreement signed by Judy Van Essen, as well as the noncompete and confidentiality agreements signed by the rest of Dial–Net's shareholders.

*Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.), *cert. denied,* 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995). This "number of hours reasonably expended on the litigation" requires the total number of hours claimed to be reasonable and that the specific hours claimed to be reasonably expended. *Alberti v. Klevenhagen,* 896 F.2d 927, 933–34 (5th Cir.), *vacated in part on other grounds,* 903 F.2d 352 (5th Cir. 1990). The fee applicant has the burden of presenting adequate documentation of the hours reasonably expended. *Kellstrom,* 50 F.3d at 324.

### b. *Determining Reasonable Hours Expended*

■ A district court may reduce the hours claimed by the prevailing party in order to account for time expended on unsuccessful claims. This follows from the definition of a "prevailing party" as one who has "succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit.' " *See Wyatt v. Cole,* 928 F.2d 718 (5th Cir.1991), *rev'd on other grounds,* 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Texas State Teachers v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). The district court arrives at a reasonable fee award "either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." *See Hensley,* 461 U.S. 424, 103 S.Ct. at 1939–41, and *Texas State Teachers,* 489 U.S. 782, 109 S.Ct. at 1492; *see also Kellstrom,* 50 F.3d at 331, citing *Hensley,* 461 U.S. 424, 103 S.Ct. at 1942–43 (a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole).

### c. *Reasonable Hourly Rate*

■ A reasonable hourly rate is based on the "prevailing market rates in the relevant community." *Blum v. Sten-*son, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). When the attorney's customary hourly rate is within the range of hourly fees in the prevailing market, that rate should be considered in setting a reasonable hourly rate. *See Islamic Center of Mississippi, Inc. v. City of Starkville,* 876 F.2d 465, 469 (5th Cir. 1989). The standard is an objective one, requiring evidence. A district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate. *See League of United Latin American Citizens (LULAC) v. Roscoe Independent School District,* 119 F.3d 1228, 1234 (5th Cir.1997), citing *Cobb v. Miller,* 818 F.2d 1227, 1232 & n. 7 (5th Cir.1987) (noting that a Magistrate Judge should not have considered his personal experience in setting a reasonable hourly rate). When a rate is not contested, it is prima facie reasonable. *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Board,* 919 F.2d 374, 379 (5th Cir.1990) citing *Islamic Center,* 876 F.2d at 469. If, from the range of market rates submitted by the parties, the court chooses an hourly rate different from an attorney's alleged customary billing rate, the court must articulate reasons for doing so. *Islamic Center,* 876 F.2d at 468, citing *Black Grievance Committee v. Philadelphia Electric Company,* 802 F.2d 648, 652–53 (3rd Cir.1986), *vacated and remanded on other grounds,* 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987). The district court's selection of a reasonable rate, if such a selection is made by the court, is reviewed on appeal for clear error. *See Kellstrom,* 50 F.3d at 324.

### d. *The "Johnson Factors"*

After calculating the number of hours reasonably expended on the case and assigning a reasonable hourly rate for an attorney's services, the district court also must consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717–19. These factors

are set forth at Rule 15 of the Uniform Local Rules of this court as follows:

(A) The time and labor required.

(B) The novelty and difficulty of the questions.

(C) The skill requisite to perform the legal services properly.

(D) The preclusion of other employment by the attorney due to the acceptance of the case.

(E) The customary fee.

(F) Whether the fee is fixed or contingent.

(G) Time limitations imposed by the client or the circumstances.

(H) The amount involved and the results obtained.

(I) The experience, reputation, and ability of the attorneys.

(J) The "undesirability" of the case.

(K) The nature and length of the professional relationship with the client.

(L) Awards in similar cases.

■ When applying the above *Johnson* factors, the court obviously must: (1), ascertain the nature and extent of the services supplied by the attorney (the reasonable number of hours for work performed); (2), value the services according to the customary fee and quality of the legal work (the reasonable rate); and (3), adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case. *See Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir.1990), citing *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir.1982) (Copper Liquor III), *modified on other grounds*, 701 F.2d 542 (5th Cir.1983) (en banc), *overruled on other grounds, International Woodworkers of America, AFL—CIO v. Champion Int'l Corp.*, 790 F.2d 1174, 1175 (5th Cir.1986).

■ As previously stated, the product of the first two steps is the "lodestar." *Nisby v. Commissioners Court of Jefferson County*, 798 F.2d 134, 136 (5th Cir. 1986). And, after calculating the lodestar amount, the district court must then apply the remaining *Johnson* factors to determine if the lodestar should be adjusted. *Id.* at 137. The district court must be careful not to "double count" a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments on the basis of the other *Johnson* factors. *Von Clark*, at 258, citing *Sims v. Jefferson Downs Racing Association*, 778 F.2d 1068, 1084 (5th Cir.1985). The district court, however, should pay "special heed" to *Johnson* criteria numbers "(1) the time and labor involved, (5) the customary fee, (8) the amount involved and the results obtained, and (9) the experience, reputation and ability of counsel." *Von Clark*, at 258, citing *Copper Liquor III*, 684 F.2d at 1092. Further, to avoid the risk of remand, the district court should explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how the *Johnson* factors were applied. *Id.* But, while the court is required to give reasons upon which an award is based, the court is not required to address each of the *Johnson* factors fully in the recitation of its reasons. *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549 (5th Cir.1987); *Cobb v. Miller*, 818 F.2d 1227 (5th Cir.1987).[7]

## II. *THE FEE DETERMINATION*

### a. *The Court's Overall Analysis of the Plaintiffs' Fee Request*

The plaintiffs' monthly billing summary is marked "Exhibit A" to their request for attorney fees and sets forth the amounts

---

**7.** "A district court's Johnson analysis ... need not be meticulously detailed to survive appellate review: If the district court has articulated and clearly applied the criteria ..., we will not require the trial court's findings to be so excrutiatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." *Kellstrom*, 50 F.3d at 331, quoting *Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir.1990).

charged for fees and expenses between September, 1993, and March of 1998. The total amount of attorney's fees reflected in the monthly billing summary is $668,-981.25. However, after adjustments the plaintiffs say they have made to the original billings, they now seek a total fee award of $561,973.75, plus expenses.

██ This court found extensive duplication of entries for deposition preparation throughout the plaintiffs' documentation. This court is mindful that many depositions were taken during this litigation, all of which were made available to the court. This court has granted the plaintiffs credit for time reasonably spent taking depositions. However, the plaintiffs' deposition strategy included the establishment of testimony in support of the tort claims on which the plaintiffs did not succeed. So, persuaded that plaintiffs are not entitled to recompense for this unsuccessful strategy, this court has adjusted plaintiffs' claimed deposition time, whether spent in preparation, conferences, the study of documents and exhibits, the study of related Minnesota litigation exhibits, and for any other activity bearing on the taking of depositions in connection with the ill-fated tort claims.

This court also is mindful of the defendants' objection that plaintiffs have excessively billed for the taking of depositions throughout this litigation. Several attorneys acting on the plaintiffs' behalf conducted depositions. This circumstance has obligated the court to scrutinize closely these billings for duplication of effort and repetitive entries. *See Walker v. United States Department of Housing and Urban Development*, 99 F.3d 761, 768 (5th Cir. 1996) (if more than one attorney is involved, the possibility of duplication of effort along with proper utilization of time should be scrutinized).

The plaintiffs respond that the defendants' non-cooperative conduct necessitated the additional deposition time. In late 1993, defendants refused to permit the plaintiffs to use depositions obtained in the related Minnesota litigation in the instant case.[8]

In resolving this dispute over plaintiffs' time claimed in taking depositions, this court has made numerous adjustments to the time claimed by the plaintiffs for deposition preparation, scheduling and debriefing, as well as some minor adjustments for time spent actually taking the depositions. Where duplication was apparent, this court has made appropriate reductions in the number of hours claimed. The time allocated to these entries now has been reduced to what this court· regards to be a reasonable level.

The defendants also object to the plaintiffs' billing entries which pertain to the related Minnesota litigation which was being pursued at the time the instant lawsuit was filed. Plaintiffs, on the other hand, argue that they are entitled to be compensated for all of their time spent pursuing the related Minnesota litigation. The parties in that litigation were Dial–Net and WorldCom, the plaintiffs in the instant case, and the sales representatives of Dial–Net who went to work for ACI and Judy Van Essen after the Dial–Net/WorldCom merger agreement was completed in March of 1993. The action was centered around the plaintiffs' contention that all these persons had signed Telecommunications Consultant Agreements ("TCCAs") with Dial–Net at some time after they were employed and had promised to refrain from going to work with any competitor of Dial–Net for a period of twenty-four (24) months after the termination of employment without the prior express authorization of Dial–Net's Board of Directors. This litigation eventually was settled and a nominal amount of damages was paid the plaintiffs by their former employees.

Plaintiffs herein contend that their fee request for hours expended on that litiga-

---

8. Of course, the Minnesota depositions were submitted to the court in addition to the depositions taken in the instant case.

tion is condoned by the holding in *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir.), *cert. denied*, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995), that a plaintiff may claim all hours reasonably necessary to litigate against multiple parties where there is a common core of facts or related legal theories. *See Kellstrom*, 50 F.3d at 327, citing *Hensley*, 461 U.S. 424, 103 S.Ct. at 1940.

This court is not persuaded by plaintiffs' argument. In *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), the United States Supreme Court upheld a fee award where the plaintiff had sued several police officers in his attempt to determine who was culpable. The fee was not reduced where the truth did not become known until the trial was almost completed. The pronouncement of *Kellstrom* and *Hensley* pertaining to common facts and related legal theories contemplated the situation of the plaintiff in *Rivera* where the plaintiff had sued several defendants based on a common core of facts and related legal theories. *See Rivera*, 477 U.S. 561, 106 S.Ct. at 2691–92, citing *Hensley*, 461 U.S. 424, 103 S.Ct. at 1940.

█ In the instant case, the plaintiffs did not have to sue the Minnesota defendants in order to determine their roles in the activities that led to the instant litigation. The testimony of the Minnesota defendants was obtainable for the purposes of the instant litigation by subpoena and deposition. Moreover, the plaintiffs did not name the Minnesota defendants as parties in the instant case in order to ferret out the truth against Judy Van Essen and ACI. Therefore, this court rejects the plaintiffs' contention that *Kellstrom* and *Hensley* require full compensation in the instant case for activities pertaining to the Minnesota litigation.

This court has carefully reviewed all entries pertaining to the Minnesota litigation. Where the activity appeared to have a bearing on the instant litigation, this court has allowed a reasonable amount of time. This court finds no reason why the plaintiffs could not have availed themselves of pleadings filed before, and opinions issued by, the Minnesota federal court on issues so closely related to the instant case. Thus, this court has granted only a reasonable amount of time for these entries and only where the claimed time relates to review and study of the documents.

█ The defendants also have challenged the reasonableness of the rates charged by David Kaufman and Charles Adams, the two primary counsel for the plaintiffs. The court has the affidavit of David Kaufman which outlines most of the monthly billing, and the affidavit of Alex A. Alston, an attorney well known to this court, who has thirty-four years of trial experience. Alston's affidavit states that the rates of Kaufman and Adams are reasonable and comparable to the rates charged by other attorneys in the Jackson, Mississippi market for protracted commercial litigation. The defendants' objection rests primarily on the contention that Kaufman's and Adams' rates exceeded the hourly rates billed by Gary Albrecht and Mark Wann (counsel for defendants) by 20% to 40%. The defendants note that their local counsel Mark Wann billed at the rate of $125.00 per hour throughout this litigation while Gary Albrecht billed at the rate of $125.00 per hour until February of 1995 when he raised his rate to $130.00 per hour. The defendants imply that the rates charged by Kaufman and Adams are too high for the Jackson, Mississippi market, but they offer little in addition to their own billing statements to support a rate reduction. Therefore, this court is unpersuaded by the defendants' objection and shall apply the hourly rates as submitted by the plaintiffs to the overall fee calculation.

This court has made other reductions in the number of hours claimed by the plaintiffs: to-wit, reductions for the time spent in conference with the plaintiffs' expert Joe Gilan; reductions for excessive time claimed in the preparation of certain motions, pleadings and other documents, such

as the plaintiffs' motion for summary judgment; reductions for the drafting of jury instructions and the amended complaint, particularly when the complaint primarily was amended to include tort claims; and time spent exploring the need for and preparing discovery requests since much of this activity related to the plaintiffs' tort claims.

### b. *Calculation of the Attorneys' Fees*

#### 1. The 1993 Billings

In the submissions for 1993, the plaintiffs say they made reductions for time spent unsuccessfully in pursuit of a preliminary injunction. During the initial phase of the instant case which began in 1993, the plaintiffs sought relief in the form of an injunction to halt the defendants' solicitation of the plaintiffs' customers and employees in the State of Minnesota. Plaintiffs argued that a noncompete and confidentiality agreement relating to a sale of assets in New Mexico and Arizona (the "New Mexico transaction") prevented the defendants from soliciting the plaintiffs' employees and customers in Minnesota. The United States Court of Appeals for the Fifth Circuit reversed this court's grant of injunctive relief, holding that the New Mexico agreement did not prevent solicitation of the plaintiffs' customers and employees beyond the borders of New Mexico and Arizona. *See LDDS v. ACI,* 35 F.3d 198, 201–02 (5th Cir.1994). Based on this ruling, the plaintiffs adjusted their billing statements, ostensibly to delete time expended on unsuccessful claims. However, this court has encountered other billing entries in the plaintiffs' documents submitted in support of their request for a fee award, particularly in 1993 and early 1994, which seek compensation for research and other time expended on plaintiffs' unsuccessful attempt to obtain the injunction. Plaintiffs apparently overlooked these hours in their effort to adjust the billing statements. This court, of course, has not included these hours in its lodestar calculation.

The plaintiffs' 1993 billing statements cover the months of July through December and seek a total of $111,375.00 in attorney's fees. There are numerous entries in the plaintiffs' 1993 documentation which refer to time expended on researching "potential causes of action," or which deal with amending the complaint to assert tort claims. Many conferences conducted by plaintiffs' attorneys with officers and employees of the plaintiffs throughout this litigation most certainly included discussions of the potential tort claims. The plaintiffs' preparation and conduct of discovery related in significant part to the plaintiffs' pursuit of substantiating liability in tort, as well as liability for securities fraud and misappropriation of trade secrets. This court ultimately ruled in favor of the defendants on the plaintiffs' claims for fraud and misrepresentation; for securities fraud; for intentional tortious interference with a contractual relationship and business advantage; for misappropriation of trade secrets and confidential information; and for civil conspiracy. Therefore, this court has made reductions in the number of hours claimed for conferences, preparation for discovery, actual conduct of discovery, and in the number of hours claimed for research based on this court's best estimate of the time that was spent on the unsuccessful tort claims raised by the plaintiffs.

After having determined the reasonable number of hours and having applied the rates charged by Kaufman and Adams, this court has calculated the following reasonable fee amounts for each month of 1993 as follows:

#### July 1993

RDK 30.5 @ $150.00 = $4575.00
CPA 15.5 @ $150.00 = $2325.00
BBT 6.5 @ $80.00 = $540.00
DDH .75 @ $50.00 = $37.50
DHF 5.5 @ $50.00 = $275.00
RAP 5.0 @ $50.00 = $250.00
PGP 3.0 @ $50.00 = $150.00

TOTAL FEES  -  $8152.50

#### August 1993

RDK 4.25 @ $150.00 = $637.50

CPA .5 @ $150.00 = $75.00
MPM 1.25 @ $80.00 = $100.00

TOTAL FEES - $812.50

### September 1993

RDK 14.5 @ $150.00 = $2175.00
CPA 8.75 @ $150.00 = $1312.50
MPM 16.0 @ $80.00 = $1280.00
JKC 1.0 @ $50.00 = $50.00
MAG 2.25 @ $50.00 = $112.50

TOTAL FEES - $4930.00

### October 1993

RDK 38.0 @ $150.00 = $5700.00
CPA 6.5 @ $125.00 = $975.00
MPM 22.75 @ $80.00 = $1820.00
DDH 1.0 @ $50.00 = $50.00
MAG 0.5 @ $50.00 = $25.00

TOTAL FEES - $8570.00

### November 1993

RDK 50.5 @ $150.00 = $7575.00
CPA 33.0 @ $150.00 = $4950.00
MPM 10.5 @ $80.00 = $840.00
DDH 1.0 @ $50.00 = $50.00
JKC 1.0 @ $50.00 = $50.00

TOTAL FEES - $13,465.00

### December 1993

RDK 48.75 @ $150.00 = $7312.50
CPA 53.25 @ $150.00 = $7987.50
DDH 19.25 @ $50.00 = $962.50
JKC 4.75 @ $50.00 = $237.50
MKG 7.5 @ 50.00 = $375.00

TOTAL FEES - $16,875.00

Adding each of the six months' totals together, this court finds that the reasonable amount of attorney fees for 1993 is $52,805.00.

### 2. The 1994 Billings

As in 1993, the plaintiffs' fee documentation for 1994 includes some charges for time expended on researching potential causes of action and tort claims. There are many entries, particularly in October of 1994, pertaining to litigation in Minnesota and to the petition for rehearing before the Fifth Circuit on the matter of the plaintiffs' request for injunctive relief. The plaintiffs continued to bill for conferences which included discussions of tort claims, and charges were included for discovery relating to the plaintiffs' pursuit of substantiating liability in tort, as well as liability for securities fraud and misappropriation of trade secrets. The plaintiffs billed a total of $346,832.50 in 1994. Once again, this court has made adjustments and reductions and has derived the following reasonable fee amounts for each billing party:

### January 1994

RDK 66.75 @ $150.00 = $10,012.50
CPA 87.25 @ $150.00 = $13,087.50
MPM 42.5 @ $80.00 = $3400.00
DDH 12.5 @ $50.00 = $625.00
MAG 3.5 @ $50.00 = $175.00

TOTAL FEES - $27,300.00

### February 1994

RDK 27.5 @ $150.00 = $4125.00
CPA 55.5 @ $150.00 = $8325.00
OEC 1.0 @ $80.00 = $80.00
DDH 13.75 @ $50.00 = $687.50
MAG 30.5 @ $50.00 = $1525.00
PGP 13.0 @ $50.00 = $650.00
DTB 6.0 @ $50.00 = $300.00
BBT .75 @ $50.00 = $37.50

TOTAL FEES - $15,730.00

### March 1994

RDK 34.0 @ $150.00 = $5100.00
CPA 86.5 @ $150.00 = $12,975.00
MPM 19.0 @ $80.00 = $1520.00
MAG 59.0 @ $50.00 = $2950.00
DDH 23.0 @ $50.00 = $1150.00

TOTAL FEES - $23,695.00

### April 1994

RDK 6.75 @ $150.00 = $1012.50
CPA 45.25 @ $150.00 = $6787.50
MPM 4.5 @ $80.00 = $360.00
PPB 1.5 @ $50.00 = $75.00
DDH 9.5 @ $50.00 = $475.00

TOTAL FEES - $8710.00

### May 1994

RDK 21.0 @ $150.00 = $3150.00
CPA 32.5 @ $150.00 = $4875.00
MPM 2.75 @ $80.00 = $180.00

MAG 41.75 @ $50.00 = $2087.50
DDH 20.0 @ $50.00 = $1000.00
PPB 6.0 @ $50.00 = $3000.00

TOTAL FEES  -  $14,292.50

### June 1994

RDK 26.5 @ $150.00 = $3975.00
CPA 28.5 @ $150.00 = $4275.00
MPM .75 @ $80.00 = $60.00
MAG 28.25 @ $50.00 = $1425.00

TOTAL FEES  -  $9735.00

### July 1994

RDK 32.75 @ $150.00 = $4912.50
CPA 37.75 @ $150.00 = $5662.50
MAG 14.25 @ $50.00 = $712.50
DDH .5 @ $50.00 = $25.00

TOTAL FEES  -  $11,312.50

### August 1994

RDK 25.5 @ $150.00 = $3825.00
CPA 26.5 @ $150.00 = $3975.00
MPM 2.5 @ $80.00 = $200.00
MAG 10.75 @ $50.00 = $537.50
DDH 2.75 @ $50.00 = $137.50
DTB 3.5 @ $50.00 = $175.00
JCK 4.0 @ $50.00 = $200.00

TOTAL FEES  -  $9050.00

### September 1994

RDK 9.75 @ $150.00 = $1462.50
CPA 16.0 @ $150.00 = $2400.00
DDH 4.0 @ $50.00 = $200.00
MAG 8.0 @ $50.00 = $400.00

TOTAL FEES  -  $4462.50

### October 1994

RDK 37.0 @ $150.00 = $5550.00
CPA 14.0 @ $150.00 = $2100.00
MPM 13.85 @ $80.00 = $1107.50
MAG 10.25 @ $50.00 = $512.50
DDH 2.0 @ $50.00 = $100.00

TOTAL FEES  -  $9370.00

### November 1994

RDK 34.75 @ $150.00 = $5212.50
CPA 20.0 @ $150.00 = $3000.00.
MPM 5.75 @ $80.00 = $460.00
MAG 1.0 @ $50.00 = $50.00

TOTAL FEES  -  $8722.50

### December 1994

RDK 28.5 @ $150.00 = $4275.00
CPA 10.0 @ $150.00 = $1500.00
MPM 20.25 @ $80.00 = $1620.00

TOTAL FEES  -  $7395.00

Adding together each month's total for 1994, this court finds that the reasonable amount of attorney's fees for that year is $149,775.00.

### 3.   The 1995 Billings

The billing statements for 1995 show two submissions in the amounts of $420.00 and $200.00 for the months of July and November. However, the monthly billing summary (Exhibit A) shows that the plaintiffs billed $9,900.00 in January. There is no billing statement for the month of January. Thus, this court has no way to determine the purpose of the January billings. This court has reviewed the July and November billings and has approved the billings in the amounts of $320.00 (telephone conference and review of a witness's testimony) and $200.00 (preparation of a response) respectively.

### 4.   The 1996 Billings

The plaintiffs' billing statements for 1996 offered little to arouse the court's concern between January and August. Thus, the court approved the billing statements for these months as follows:

### January 1996

RDK 2.0 @ $160.00 = $320.00
CPA 1.5 @ $160.00 = $240.00

TOTAL FEES  -  $560.00

### March 1996

RDK 11.75 @ $160.00 = $1880.00

TOTAL FEES  -  $1880.00

### April 1996

RDK 19.0 @ $175.00 = $3325.00
CPA 1.5 @ $175.00 = $262.50
MPM .25 @ $100.00 = $25.00

TOTAL FEES - $3612.50

### May 1996

RDK 9.5 @ $175.00 = $1662.50
CPA .5 @ $175.00 = $87.50
MPM 6.5 @ $100.00 = $650.00

TOTAL FEES - $2400.00

### June 1996

CPA 5.0 @ $175.00 = $875.00
MPM .5 @ $100.00 = $50.00

TOTAL FEES - $925.00

### July 1996

RDK 4.0 @ $175.00 = $700.00
MPM 3.5 @ $100.00 = $350.00

TOTAL FEES - $1050.00

### August 1996

RDK 8.5 @ $175.00 = $1487.50
CPA 37.0 @ $175.00 = $6475.00
MPM .5 @ $100.00 = $50.00

TOTAL FEES - $8012.50

In September of 1996, the plaintiffs began billing hours for trial preparation. Plaintiffs submit a claim for just over $100,000.00 in attorney's fees and expenses for services performed that month. The actual trial began in October, culminating on October 16, 1996. The plaintiffs submit a bill for just over $78,000 .00 in fees and expenses allegedly incurred in October. Then, in November of 1996, post trial matters, including the preparation of trial briefs, resulted in a billing of $21,817.50.

As noted previously, the district court arrives at a reasonable fee award "either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." *See Hensley*, 461 U.S. 424, 103 S.Ct. at 1939–41. For the months of September, October and November of 1996, this court has determined to follow the second path recommended by *Hensley*, " ... reducing the award to account for the limited success of the plaintiff." *Id.* While the plaintiffs succeeded on their claim of breach of contract,

they did not succeed on their claims of fraud and misrepresentation, securities fraud, intentional tortious interference with a contractual relationship and business advantage, misappropriation of trade secrets and confidential information, and civil conspiracy. This court's best estimate is that the scope of the plaintiffs' tort claims encompassed up to two-thirds of this lawsuit. The plaintiffs' punitive damage claim rested primarily on the finding of tort liability. At the close of trial, this court made a special effort to determine whether the plaintiffs stood by all of their claims in view of the proof presented. Plaintiffs' attorney, David Kaufman, assured the court that all claims were still on the table. Thus, the plaintiffs cannot be heard to contend that the tort claims were a mere adjunct of a greater claim for breach of the Minnesota noncompete-non-solicitation agreement which was tied to the Dial–Net merger agreement by the latter's terms. Inasmuch as the plaintiffs' success at trial was limited, their recovery also should be limited. *Hensley* provides that, when a plaintiff succeeds on some, but not all claims, "two questions must be addressed:" (1) whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the [successful] claims;" and (2) whether "the plaintiff achiev[ed] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.*, 461 U.S. 424, 103 S.Ct. at 1940. When a plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories, ... work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved;" accordingly, "no fee may be awarded for services on the unsuccessful claim." *Hensley*, 461 U.S. 424, 103 S.Ct. at 1940. The plaintiffs' tort claims were based on entirely different legal theories from the contract claims on which the plaintiffs succeeded. Additionally, different facts were required for proof of the plaintiffs' fraud and conspiracy claims, as well as the plaintiffs' securities fraud and trade secret claims. Thus, the

court has awarded only one-third of the amounts requested by the plaintiffs for September, October and November of 1996.

### September 1996

Fees approved - $31,617.00

### October 1996

Fees approved - $22,304.00

### November 1996

Fees approved - $7,272.50

### 5. The 1997–1998 Billings

This court approved the plaintiffs' billings for February 1997, without adjustment, resulting in a fee award of $1,562.50 for that month. The plaintiffs' billings for December of 1997, were reduced only slightly from $1,050.00 to $960.00. The court approved $765.00 of the plaintiffs' $990.00 billing for January of 1998. In February of 1998, the plaintiffs billed over $10,000.00 in fees for the hearing on the matter of attorney's fees. This court's review of these charges has resulted in the following judicious adjustments and reductions:

### February 1998

| | | |
|---|---|---|
| RDK 20.25 @ $175.00 = | $3543.75 |
| MPM 16.0 @ $115.00 = | $1840.00 |
| LVE 5.5 @ $70.00 = | $122.50 |

TOTAL FEES - $6028.75

### 6. The Lodestar Calculation

This court, after having determined the reasonable number of hours and having adjusted the rates charged by Kaufman and Adams as previously explained, has found the following fee amounts to be reasonable and just for each month of the plaintiffs' billings. Adding the total amounts of attorney's fees approved for each monthly billing period submitted by the plaintiffs, the court has calculated the lodestar to be $292,049.75.

| | | |
|---|---|---|
| July 1993 | - | $8152.50 |
| August 1993 | - | $812.50 |
| September 1993 | - | $4930.00 |
| October 1993 | - | $8570.00 |
| November 1993 | - | $13,465.00 |
| December 1993 | - | $16,875.00 |

| | | |
|---|---|---|
| January 1994 | - | $27,300.00 |
| February 1994 | - | $15,730.00 |
| March 1994 | - | $23,695.00 |
| April 1994 | - | $8710.00 |
| May 1994 | - | $14,292.50 |
| June 1994 | - | $9735.00 |
| July 1994 | - | $11,312.50 |
| August 1994 | - | $9050.00 |
| September 1994 | - | $4462.50 |
| October 1994 | - | $9370.00 |
| November 1994 | - | $8722.50 |
| December 1994 | - | $7395.00 |
| July 1995 | - | $320.00 |
| November 1995 | - | $200.00 |
| January 1996 | - | $560.00 |
| March 1996 | - | $1880.00 |
| April 1996 | - | $3612.50 |
| May 1996 | - | $2400.00 |
| June 1996 | - | $925.00 |
| July 1996 | - | $1050.00 |
| August 1996 | - | $8012.50 |
| September 1996 | - | $31,617.00 |
| October 1996 | - | $22,304.00 |
| November 1996 | - | $7272.50 |
| February 1997 | - | $1562.50 |
| December 1997 | - | $960.00 |
| January 1998 | - | $765.00 |
| February 1998 | - | $6028.75 |

TOTAL FEES - $292,049.75

## III. APPLICATION OF OTHER JOHNSON FACTORS

### a. *Novelty, Difficulty and Attorney Skill*

The *Johnson* opinion recognizes the commonsense proposition that easier and more routine matters take less time to prepare than do cases that present novel, difficult questions. *See Johnson*, 488 F.2d at 717–18. Similarly, it is also reasonable to assume that a more experienced attorney will take less time to accomplish a routine task than will a novice. *See League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School District*, 119 F.3d at 1234. Furthermore, the Fifth Circuit has stated that it is appropriate to distinguish between legal tasks that plainly require an attorney's skill, and other tasks such as investigation, clerical work, compilation of

facts and statistics, work which often can be accomplished by non-lawyers but which a lawyer may do because he has no other help available, or simply because the lawyer may desire to perform a specific task. The Fifth Circuit recognizes that such work not requiring the skill of an attorney, but which an attorney nevertheless may perform, may command a lesser rate. *Cruz v. Hauck,* 762 F.2d at 1235. This court took these matters into account when it determined the lodestar and finds no basis for further adjustment.

### b. *Preclusion of Other Employment*

This factor involves conflicts of interest which may arise from the representation and the time the representation in question may take away from the attorney for other opportunities. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 718. Few Fifth Circuit decisions deal in any depth with this factor. However, district court cases note that as a general matter the "preclusion from accepting other employment" factor is more appropriate when considering an increase in or enhancement of the lodestar amount. *See Migis v. Pearle Vision, Inc.,* 944 F.Supp. 508 (N.D.Tex.1996). This court finds no basis for enhancement in the instant case.

### c. *Customary Fee—Attorney Experience, Reputation, and Ability*

At least two of the *Johnson* factors are relevant in determining a reasonable rate of compensation. They are: (1) the experience, reputation and ability of counsel; and (2) the customary fee for similar work in the community. *Shipes v. Trinity Industries,* 987 F.2d 311, 319 (5th Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993); *Alberti v. Klevenhagen,* 896 F.2d 927, 930 (5th Cir.), *vacated in part,* 903 F.2d 352 (5th Cir.1990). Also, where appropriate, the court will consider awards of fees in similar cases. This court already has made adjustments to the rates charged by attorneys Kaufman and Adams for the reasons above-stated and is unaware of any reason to adjust further the lodestar based on these factors.

### d. *Time Limitations Imposed by Client or Circumstances*

This factor—time limitations imposed by the client or by circumstances—ordinarily arises in conjunction with a request for enhancement of the lodestar amount. *See Alberti v. Klevenhagen,* 896 F.2d 927, 934 (5th Cir.1990). The *Johnson* Court stated that this factor is particularly important when a new counsel is called in to prosecute the appeal or handle matters at a late stage in the proceeding. *Johnson v. Georgia Highway Express,* 488 F.2d at 718; *In re Combustion, Inc.,* 968 F.Supp. 1116, 1137 (W.D.La.1997). These circumstances are not present in the instant case.

### e. *Amount Involved and the Results Obtained*

Generally, where the plaintiff recovers most, if not all, of the amount claimed of the relief sought, the results obtained may be classified as excellent and the fee awarded should reflect this outcome. Similarly, if a favorable decision corrects a discriminatory or other unconstitutional circumstance which affects a large class of citizens, then the fee should reflect the relief obtained. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d. at 718; *In Re Combustion, Inc.,* 968 F.Supp. at 1139 (bringing this factor into play where an important public policy is advanced by the decision); *Feinberg v. Hibernia Corporation,* 966 F.Supp. 442, 453 (E.D.La.1997) (refusing to enhance a fee award where the settlement amount of $20,000,000.00 represented only 20% – 25% of the original claim). The instant case brought about no result which affected a large class of citizens, nor has the case advanced any important matter of public policy. Furthermore, the amount of damages awarded the plaintiffs is only a portion of the total amount of damages sought. This court already has taken these matters into account.

### f. *The Undesirability of the Case*

The district court may conclude that a case is undesirable where the prevailing

attorney was subjected to oppressive, unpleasant, or intimidating conditions during the representation of the client. *Cooper v. Pentecost*, 77 F.3d at 834. This factor was added to the list of factors to be considered by the *Johnson* Court, in recognition of the possibility that representation in civil rights cases might have a negative economic impact on an attorney's practice. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718. This factor is not present in the instant case.

### g. *Conclusion*

This court finds no foundation for further adjustment of the lodestar based on any other *Johnson* factor. Therefore, this court finds that the lodestar it has calculated reflects a fair and fully compensatory fee for the services rendered by the plaintiffs' attorneys.

### IV. *EXPENSES AND CASH ADVANCES*

The plaintiffs ask the court to award $73,826.34 for cash advances made the plaintiffs' attorneys over the course of the litigation. This court has reviewed each of the entries made for cash advances and has made adjustments based on its best estimate regarding photocopies pertaining to the request for injunctive relief; for the defendants' appeal of the court's injunction to the Fifth Circuit; for research and photocopying pertaining to the plaintiffs' tort claims; and other minor adjustments where the amount claimed appeared to be excessive. This court hereby awards the plaintiffs expenses and cash advances in the amount of $52,600.38.

### V. *CLAIM FOR TIME PREPARING FEE REQUEST*

Prevailing parties are entitled to attorney's fees for time spent establishing and litigating a fee claim as well as for time spent prosecuting the merits of the civil rights action. *Johnson v. State of Mississippi*, 606 F.2d 635, 637–38 (5th Cir. 1979). The plaintiffs' attorneys seek $2,676.25. After review of the time sheets and the materials presented, this court hereby awards the plaintiffs $1,500.00.

### VI. *CONCLUSION*

Therefore, based on the foregoing analysis, this court finds the plaintiffs are entitled to fees in the amount of $293,549.75 ($292,049.75 + $1500.00), plus expenses and cash advances in the amount of $52,600.38. The total amount to be paid by the defendants for attorney's fees and expenses incurred by the plaintiffs in their pursuit of this litigation is $346,150.13.